GRAVOIS, J.
| TDefendant, Jermaine Jamison, appeals his conviction and sentence for one count of possession of heroin in violation of La. R.S. 40:966(C), and his habitual offender adjudication and enhanced sentence. For the following reasons, we: 1) affirm defendant’s conviction; 2) reinstate and affirm defendant’s original sentence; 3) affirm defendant’s habitual offender adjudication; 4) vacate defendant’s habitual offender sentence; 6) remand the matter for resen-tencing and for correction of the Uniform Commitment Order as noted herein; and 6) grant appellate counsel’s motion to withdraw as counsel of record for defendant.
PROCEDURAL HISTORY
On August 24, 2016, the Jefferson Parish District Attorney filed a bill of information charging defendant, Jermaine Jami-son, with possession of heroin in violation of La. R.S. 40:966(C). Defendant pled not guilty at his arraignment on September-30, 2015.. On that same day, defendant filed omnibus motions, which were never heard or ruled .upon. On November 17,. 2015, defendant withdrew his not. guilty plea and pled guilty to the offense charged.[1] On that same day, defendant was sentenced to six years in the Department of Corrections,[2] a $500.00 fine, and court costs.[3] Defendant was given credit for “all time served in this particular matter.”[4]
Also on November 17, 2015, the State filed a habitual offender 'bill of information charging defendant as a second felony offender.[5] Defendant stipulated to the habitual offender bill on that same day. The trial court then vacated | ^.defendant’s original sentencé and sentenced him as a second felony offender to six years in the Department of Corrections without the benefit of probation or suspension of sentence, a $500.00 fine, and court costs. The enhanced sentence was ordered to run concurrently with the sentences in district court case number 15-4972, and the trial judge explained that it was his intention that “this sentence be run concurrent with any parole revocation that [defendant] may *910 be facing.” Defendant was given credit for “any time [he] served in connection with this matter.”[6]
Thereafter, defendant sought this Court’s supervisory review of the trial court’s November 30, 2015 denial of his pro se motion for a probable cause hearing. This Court denied defendant’s writ application, finding that as a result of his guilty plea, he was not entitled to relief, as he waived all non-jurisdictional defects in the proceedings leading up to his guilty plea. See State v. Jamison, 15-734 (La. App. 5 Cir. 12/3/15) (unpublished writ disposition).
On April 26, 2016, defendant filed a Uniform Application for Post-Conviction Relief. In response, the trial court ordered the State to file a response or answer to defendant’s application for post-conviction relief. On August 8, 2016, defendant filed a Motion for Summary Disposition, wherein he stated that no ruling, opinion, or judgment was rendered as to his application for post-conviction relief. The court again ordered the State to file a response. On August 31, 2016, defendant filed an additional Motion for Summary Disposition, and on September 6, 2016, the tidal court ordered that an evidentiary hearing be held, as it found that the State had failed to comply with the court’s orders to file a response or an answer. The State filed its response and answer on October 20, 2016. At the conclusion of a hearing conducted on October 24, 2016, the trial court issued an Isorder dismissing defendant’s application for post-conviction relief without prejudice as premature.
Defendant filed a writ application with this Court requesting an out-of-time appeal, which was denied, with this Court ruling that it did not have authority to grant defendant an out-of-time appeal. See State v. Jamison, 16-700 (La. App. 5 Cir. 12/13/16) (unpublished writ disposition). On December 27, 2016, defendant filed a Motion for Out of Time Appeal with the trial court pursuant to State v. Counterman, 475 So.2d 336 (La. 1985). On January 4, 2017, the trial court granted defendant an out-of-time appeal and dismissed his application for post-conviction relief without prejudice.[7] This appeal followed.
FACTS
Because defendant’s conviction was the result of a guilty plea, the facts underlying the crime of conviction were not fully developed in the record. However, the bill of information indicates that on August 6, 2015, defendant “violated La. R.S. 40:966(C) in that he did knowingly or intentionally possess a controlled dangerous substance, to wit: Heroin.”
LAW AND ANALYSIS
Under the procedure adopted by this Court in State v. Bradford, 96-929 (La. App. 5 Cir. 6/25/96), 676 So.2d 1108, 1110-11,[8] appointed appellate counsel has filed a brief asserting that he has thoroughly reviewed the trial court record and cannot find any non-frivolous issues to raise on appeal. Accordingly, pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and State v. Jyles, 96-2669 (La. 12/12/97), 704 So.2d 241 (per *911 curiam), appointed appellate counsel requests permission to withdraw as counsel of record for defendant.
|4In Anders, the United States Supreme Court stated that appointed appellate counsel may request permission to withdraw if he finds his case to be wholly frivolous after a conscientious examination of it. The request must be accompanied by “ ‘a brief referring to anything in the record that might arguably support the appeal’ ” so as to provide the reviewing court “with a basis for determining whether appointed counsel have fully performed their duty to support their clients’ appeals to the best of their ability” and to assist the reviewing court “in making the critical determination whether the appeal is indeed so frivolous that counsel should be permitted to withdraw.” McCoy v. Court of Appeals of Wisconsin, Dist. 1, 486 U.S. 429, 439, 108 S.Ct. 1895, 1902, 100 L.Ed.2d 440 (1988).
In State v. Jyles, 704 So.2d at 241, the Louisiana Supreme Court stated that an Anders brief need not tediously catalog every meritless pretrial motion or objection made at trial with a detailed explanation of why the motions or objections lack merit. An Anders brief must demonstrate by full discussion and analysis that appellate counsel “has cast an advocate’s eye over the trial record and considered whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the jury for its consideration.” Id.
When conducting a review for compliance with Anders, an appellate court must conduct an independent review of the record to determine whether the appeal is wholly frivolous. Bradford, 676 So.2d at 1110. If, after an independent review, the reviewing court determines that there are no non-frivolous issues for appeal, it may grant counsel’s motion to withdraw and affirm the defendant’s conviction and sentence. However, if the court finds any legal point arguable on the merits, it may either deny the motion and order the court-appointed attorney to file a brief arguing |fithe legal point(s) identified by the court, or grant the motion and appoint substitute appellate counsel. Id.
Defendant’s appellate counsel asserts that, after a detailed review of the record, he could find no non-frivolous issues to raise on appeal. Counsel avers that the bill of information appears to be in order, and defendant was present during the critical proceedings against him. Counsel notes that defendant pled guilty pursuant to a plea agreement and did not reserve the right to seek review of any trial court ruling pursuant to State v. Crosby, 338 So.2d 584 (La. 1976). He also notes that defendant was advised that by pleading guilty, he was giving up his rights to an appeal and that defendant’s answers throughout the colloquy were sensible, direct, and articulate. He contends that defendant’s sentence of six years as a second felony offender was imposed in conformity with the plea agreement and was advantageous to defendant. Appellate counsel has filed a motion to withdraw as counsel of record for defendant which states he has made a conscientious and thorough review of the trial court record and can find no non-frivolous issues to raise on appeal and no ruling of the trial court that can arguably support the appeal. Counsel asserts that he has notified defendant of this filing and has advised defendant of his right to file a pro se supplemental brief in this appeal.[9]
*912 The State has filed a response, agreeing that counsel has conducted a conscientious and thorough review of the trial court record. The State submits that counsel has conformed with the procedures set forth in Anders and Jyles, supra, and that counsel’s motion to withdraw should be granted. The- State further agrees that the record does not contain any non-frivolous issues to be raised on appeal.
An independent review of- the record supports appellate counsel’s assertion that there' are no non-frivolous issues to be raised on appeal.
|fiThe bill of information properly charged defendant and plainly and concisely stated the essential facts constituting the charged offense. It also sufficiently identified defendant and the crime charged. See generally La. C.Cr.P. arts. 464-466.
As reflected by the minute entries and the commitment, defendant appeared at each stage of the proceedings against him. He attended his arraignment, his guilty plea proceeding, his sentencing, and his habitual offender bill proceeding. As such, defendant’s presence does not present any issues that would support an appeal.
Further, defendant pled guilty as charged to possession of heroin in violation of La. R.S. 40:966(0). He admitted to being a second felony offender as alleged in the habitual offender bill of information. If a defendant pleads guilty, he normally waives all non-jurisdictional defects in the proceedings leading up to the guilty, plea and precludes review of such defects either by appeal or post-conviction relief. State v. Wingerter, 05-697 (La.App. 5 Cir. 3/14/06), 926 So.2d 662, 664. An unconditional plea, willingly and knowingly made, waives any and all non-jurisdictional defects and bars a defendant from later asserting on appeal that the State failed to produce sufficient proof at the habitual offender hearing. State v. Schaefer, 97-465 (La.App. 5 Cir. 11/25/97), 704 So.2d 300, 304.
The record indicates that defendant filed several omnibus motions, which do not appear to have been ruled' upon prior to the time defendant entered his guilty plea. Nevertheless, defendant waived any argument regarding these outstanding motions by pleading guilty without raising any argument concerning these motions. See State v. Corzo, 04-791 (La.App. 5 Cir. 2/15/05), 896 So.2d 1101, 1102.
Next, once a defendant is sentenced, only those guilty pleas that are constitutionally infirm may be withdrawn by appeal or post-conviction relief. A Lguilty plea is constitutionally infirm if it is not entered freely and voluntarily, if the Boykin[10] colloquy is inadequate, or when a defendant is induced, to enter the plea by a plea bargain or what he justifiably believes was a plea bargain and that bargain is not kept. State v. McCoil, 05-658 (La.App. 5 Cir. 2/27/06), 924 So.2d 1120, 1124. In such a case, the defendant has been denied due process of law in that the plea was not given freely and kpowingly. State v. Dixon, 449 So.2d 463, 464 (La. 1984).
The record shows that defendant was aware that he was pleading guilty to possession of heroin in violation of La. R.S. 40:966(C).[11] On the waiver of rights form *913 and during the colloquy with the trial judge, defendant was advised of his right to a jury trial, his right to confrontation, and his privilege against self-incrimination, as required by Boykin. Defendant signed the waiver of rights form, indicating therein that he understood that he was waiving these rights by pleading guilty. During the colloquy with the trial judge, defendant also indicated that he understood that he was waiving these rights.
During the colloquy, defendant acknowledged that he reviewed the guilty plea form with his attorney,' understood the concepts contained in the form, and did not have any questions. He denied that he was promised, threatened, or forced in any way to plead guilty. He provided his daté' of birth, indicated that the last grade he completed was eighth grade, and answered affirmatively when asked if he could read and write the English language. Defendant was advised of his right to an attorney and his right to appeal upon conviction. The judge explained that by pleading guilty, he was waiving or giving up his rights. Defendant indicated that he understood this.
| ^Defendant specified that he wanted to plead guilty and acknowledged by doing so, he was admitting that he committed the crime to which he was pleading guilty. Defendant indicated that he understood that his guilty plea must be entered knowingly, intelligently, and voluntarily on his part and answered affirmatively when asked if pleading guilty was in his best interest.[12]
The waiver of rights form reflects the entire -sentencing range of four to ten years, that defendant could receive for his conviction. It further reflects that defendant would receive- a sentence of six years in the Department of Corrections, with credit for all time served, plus court costs, fines, and fees, and that the sentence would “run concurrent with any other sentence [defendant was] serving & with parole time.” During the colloquy, the trial court advised defendant that by. pleading guilty, he faced a sentence of not less than four nor more than ten years imprisonment for the offense. Although the waiver of rights form indicated that defendant would receive a six-year sentence in the Department of Corrections, the trial judge did not verbally advise defendant during the colloquy that he would impose a six-year sentence.
La. C.Cr.P. art. 556.1(A)(1) provides that, prior to accepting a guilty-plea, the court must personally inform the defendant of the nature of the charge to which the plea is offered, any mandatory minimum penalty, and the maximum possible penalty. “Any variance' from the procedures required by this Article which does not affect substantial rights of the accused shall not invalidate the plea.” La. C.Cr.P. art. 556.1(E). Violations of La. C.Cr.P. art. 556.1 that do not rise to the level of Boy- *914 kin violations are subject to harmless error analysis. State v. Craig, 10-854 (La. App. 5 Cir. 5/24/11), 66 So.3d 60, 64.
| nHere, the trial judge advised defendant of the mandatory minimum penalty and the maximum possible penalty by his advisal of the sentencing range under the statute in the waiver of rights form and during the colloquy in compliance with La. C.Cr.P. art. 556.1(A)(1). The waiver of rights form also includes a notation indicating that defendant’s sentence would be six years in the Department of Corrections, plus court costs, fines, and fees. The record indicates that the trial court asked defendant whether the signature on the form was his and whether he reviewed the form with his attorney. Defendant responded affirmatively.
Further, the trial court advised defendant that his conviction could be used against him to enhance or increase sentences or penalties in the future. After the colloquy with defendant, the trial judge found that defendant had knowingly, intelligently, freely, and voluntarily entered his plea of guilty and accepted his plea. After sentencing delays were waived, on the possession of heroin charge, the trial court sentenced defendant to six years in the Department of Corrections, a $500.00 fine, plus court costs, with credit for all time served in this particular offense.
With respect to the habitual offender proceeding, defendant executed a waiver of rights form, which reflects that defendant was informed that by “pleadflng] guilty,” he was giving up his right to “plead not guilty,” to have a hearing, and to force the District Attorney to prove that he was the same individual with a prior felony record, that the time period between the completion of the sentence and the date of the crime was less than ten years, and that he was told of his Boykin rights prior to when he entered any prior guilty plea. He was further informed of his right to remain silent at such a hearing and not to have his silence held against him. Defendant placed his initials next to these provisions in the waiver of rights form, including one wherein he was advised that the sentencing range as a habitual offender was five to twenty years and that he would receive a | msentence of six years in the Department of Corrections. Defendant indicated that he was satisfied with his attorney and the court’s efforts to explain the rights and consequences of his “guilty plea” and that he was not in any way forced, coerced, or threatened. The waiver of rights form is dated the same date as defendant’s stipulation to the habitual offender bill of information and was signed by the defense attorney, the trial judge, and defendant. The trial judge indicated on the form that he was accepting the plea as knowingly, intelligently, freely, and voluntarily made by defendant.
La. R.S. 15:529.1 requires the trial court to advise a defendant of the allegations contained in the habitual offender bill of information, his right to a hearing, and his right to remain silent. State v. Oliver, 14-428 (La.App. 5 Cir. 11/25/14), 165 So.3d 970, 976, writ denied, 14-2693 (La. 10/9/15), 178 So.3d 1001. The failure of the trial court to advise a defendant of his right to a trial and to remain silent is harmless error when the habitual offender status is established by competent evidence offered by the State at a hearing, rather than by the admission of the defendant. Id. However, there is reversible error when the defendant stipulates to the habitual offender bill of information without having been informed of his right to a hearing or his right to remain silent. Id.
Louisiana jurisprudence provides that if the record reflects that the defendant was advised of his habitual offender rights by the trial judge and/or his attor *915 ney, then the defendant intelligently waived his rights. Oliver, supra.
In the present matter, at the start of the habitual offender bill colloquy, defense counsel stated on the record: “I have gone over the Waiver of Rights Form. At this time Mr. Jamison will admit that he is a Second Felony Offender.” The trial judge then stated:
It is my understanding from your attorney that you wish to plead guilty as a Second Felony Offender. Do you understand you have a | n right to and are entitled to a trial by Judge in that matter and you are not required to plead guilty to that matter? You understand that?
Defendant answered “yes.”
The commitment further indicates that the trial judge advised defendant of his right to a habitual offender bill hearing, yet makes no mention of defendant’s right to remain silent. Review of the colloquy also does not indicate that defendant was advised of his right to remain silent. Later during the colloquy, the trial judge inquired as to whether defendant had any questions about “these forms” defendant signed and whether he understood those rights. The trial judge inquired as to whether defendant reviewed the form with his attorney, to which defendant indicated that he had.
Upon review, we find that although defendant was not completely advised of his habitual offender rights during the colloquy, the waiver of rights form, which was signed by defense counsel, the judge, and defendant, reflects that defendant was advised of his right to a hearing and to remain silent prior to his stipulation as a habitual offender. Further, defense counsel made a specific reference to the waiver of rights form prior to the judge’s acceptance of defendant’s stipulation to the habitual offender bill of information. As such, the record reflects that defendant was advised of his habitual offender rights and executed the waiver of rights form prior to the colloquy and his stipulation to the habitual offender bill. Accordingly, we find that there were no non-frivolous issues for counsel to raise on appeal involving defendant’s stipulation to the habitual offender bill of information.[13]
haFurther, defendant admitted he was the same person convicted of attempted disarming of a police officer in case number 09-6506 in the 24th Judicial District Court. The trial court advised defendant that by “pleading guilty” in the habitual offender proceeding, he would be waiving certain rights, including the right to a trial “by [jjudge or jury” and to appeal, to confrontation, against self-incrimination, to require witnesses to appear and testify on his behalf, and to an attorney. Defendant denied having any questions regarding the waiver of rights form and indicated that he understood those rights and had reviewed the form with his attorney. He also ac *916 knowledged that his signature was on the bottom of the form. As to his habitual offender sentence, the trial court advised defendant that by “pleading guilty,” the maximum , sentence the court could impose was not less than-five years nor more than twenty years as a second felony offender:
Defendant again provided his name and date of birth, provided that the last grade that he completed was eighth, and indicated that he could read and write the English language. Defendant acknowledged that his stipulation must be knowingly, intelligently, freely, and voluntarily made, and he denied that he was promised, induced, or threatened in any way to plead guilty. Defendant acknowledged that he was “pleading guilty” because it was in his best interest, and that any subsequent conviction could be used to enhance or increase penalties in the future.[14] Also; it appears that defendant received a substantial benefit for stipulating to the habitual offender bill of information, since there was discussion on the record before defendant stipulated to the habitual offender bill of information that the State believed it was possibly capable of proving defendant was at least a third felony offender and could face a life sentence. The trial court | ^agreed that defendant’s stipulation to the habitual offender bill of information was knowingly, intelligently, freely, and voluntarily made and accepted the stipulation.
By stipulating to the habitual offender bill of information, defendant .waived his right to a hearing and to any possible non-jurisdictional defects. Defendant is accordingly barred from asserting on appeal that the State.failed to produce sufficient proof at the habitual offender bill hearing when he waived the hearing. Schaefer, supra. See also State v. Crawford, 14-364 (La. App. 5 Cir. 12/23/14), 166 So.3d 1009, 1019.
Additionally, defendant’s sentences do not present any issues for appeal, except as noted in our errors patent review, infra. Defendant’s original sentence and his enhanced sentence fall within the sentencing ranges prescribed by statute. See La, R.S. 40:966(C) and La. R.S. 15:529.1.[15] Defendant’s original sentence was vacated following his stipulation as a habitual offender. Further, defendant’s original and enhanced sentences of six years were imposed pursuant to, and in conformity with, the plea agreements. La. C.Cr.P. art. 881.2(A)(2) precludes a defendant from seeking review of a sentence imposed in conformity with a plea agreement, which was set forth in the record at the time of the plea. State v. Moore, 06-875 (La.App. 5 Cir. 4/11/07), 958 So.2d 36, 46; State v. Washington, 05-211 (La.App. 5 Cir. 10/6/05), 916 So.2d 1171, 1173.
With respect to defendant’s original sentence, before the colloquy began, there was an exchange among the parties and the trial judge about the plea negotiations. *917 Specifically, the trial judge stated: “I wouldn’t do five. The discussions were six. Quite obviously, it never got down to five.” Similarly, during the habitual offender sentence, the trial judge did not advise defendant that he would be sentenced to six years in the Department of Corrections. However, |14the waiver of rights forms and the discussion before the colloquy clearly indicate that defendant was aware of the six-year term. Therefore, we find that defendant was sentenced in accordance with the plea agreements despite the trial judge’s failure to verbalize the actual sentences during the colloquy before the sentences were imposed.
This Court also has applied La. C.Cr.P. art. 881.2(A)(2) to cases in which a defendant admits to the allegations in a habitual offender bill of information as part of a sentencing agreement. State v. Robinson, 15-661 (La.App. 5 Cir. 2/24/16), 186 So.3d 1269, 1272 (citing State v. Bolton, 02-1034 (La.App. 5 Cir. 3/11/03), 844 So.2d 135, 142, writ denied, 03-1159 (La. 11/14/03), 858 So.2d 417).[16]
Because appellate counsel’s brief adequately demonstrates by full discussion and analysis that he has reviewed the trial court proceedings and cannot identify any basis for a non-frivolous appeal, and an independent review of the record supports counsel’s assertion, appellate counsel’s motion to withdraw as counsel of record for defendant is hereby granted.
PRO SE SUPPLEMENTAL BRIEF
Defendant raises three assignments of error in his pro se supplemental brief, which assignments are addressed below.
PRO SE ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO[17]
In his first and second pro se assignments of error, defendant argues that the trial court “exceeded its jurisdiction” by continuing to pursue a criminal prosecution when the bill of information was filed without a probable cause determination being made within forty-eight hours after his arrest. He contends that a citation or summons should have been issued to him following his arrest for |1Ka bill of information to be filed. Defendant attached the August 6, 2015 Jefferson Parish Arrest Report and Probable Cause Affidavit and the bill of information in case number 15-4972 to his pro se brief.[18]
In Crosby, supra, the Louisiana Supreme Court held that an unqualified plea *918 of guilty does not preclude review of jurisdictional defects. Crosby, 338 So.2d at 588. Jurisdictional defects are those which, even conceding a defendant’s factual guilt, do not permit conviction of the charged offense. Id. In Crosby, the Supreme Court listed the following examples of jurisdictional defects: (1) the lack of jurisdiction of the sentencing court; (2) the conviction represents double jeopardy; (3) the prosecution had prescribed at the time it was instituted; (4) the State lacked constitutional or legal power to try the defendant for the charged offense; (5) the statute under which prosecution is brought is unconstitutional; (6) the charge in the indictment does not constitute a crime; and (7) certain types of patent errors that prevent conviction for the offense. State v. Jefferson, 11-391 (La.App. 5 Cir. 12/28/11), 83 So.3d 1126, 1129-30. As previously discussed, defendant entered an unqualified guilty plea, and accordingly, we find that defendant’s arguments do not raise a jurisdictional defect for this Court’s review. These errors were not preserved for review, and accordingly, will not be addressed.
PRO SE ASSIGNMENT OF ERROR NUMBER THREE
In his third and final pro se assignment of error, defendant alleges that his trial counsel was ineffective as she failed to “consult” with him, failed to interview potential witnesses whose names he provided to her, and failed to file a motion for an evidentiary hearing and a motion to suppress evidence. Thus, he argues that his trial counsel failed to present the available defenses to him in violation of | ^“constitutionally required standards.” He also argues that he pled guilty on his trial counsel’s advice “which was based on her misinterpretation of the incident as provided by the District Attorney.” As evidence of her ineffectiveness,' defendant attached a letter between him and his trial counsel, as well as her response to his complaint to the Louisiana State Bar Association and other correspondence.[19]
The Louisiana Supreme Court has held that generally a claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief, rather than on direct appeal, to afford the parties an opportunity to make an adequate record for review. State v. Truitt, 500 So.2d 355, 359 (La. 1987). However, if the record on appeal contains sufficient evidence to decide the issue, and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Armstead, 07-741 (La. App. 5 Cir. 2/6/08), 980 So.2d 20, 24, writ denied, 08-601 (La. 10/3/08), 992 So.2d 1010.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that 1) his attorney’s performance was deficient, and 2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Allen, 06-778 (La.App. 5 Cir. 4/24/07), 955 So.2d 742, 750, writ denied, 08-2432 (La. 1/30/09), 999 So.2d 754. The error is prejudicial if it is so serious as to deprive the defendant of a fair trial, or “a trial whose result is reliable.” Strickland, 466 U.S. at 687, 104 *919 S.Ct. at 2064; Allen, supra. In order to show prejudice, the defendant must demonstrate that, but for counsel’s unprofessional conduct, the outcome of the case would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Allen, supra.
|17In order to prevail, the accused must overcome a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S.Ct. at 2066. An alleged error that is within the ambit of trial strategy does not establish ineffective assistance of counsel, because “opinions may differ on the advisability of such a tactic.” State v. Singleton, 05-634 (La.App. 5 Cir. 2/14/06), 923 So.2d 803, 811, writ denied, 06-1208 (La. 11/17/06), 942 So.2d 532.
Decisions relating to failure to investigate certain theories or other trial preparation issues would require an evidentiary hearing, and could not possibly be decided in the appeal. State v. Simmons, 13-258 (La.App. 5 Cir. 2/26/14), 136 So.3d 358, 370, writ denied, 14-674 (La. 1/31/14), 152 So.3d 151. Further, only in an evidentiary hearing in the district court, where the defendant could present evidence beyond that contained in the record on appeal, could the allegations be sufficiently investigated. Id. In the present case, upon review, we find that the limited record on appeal before us is insufficient to consider defendant’s ineffective assistance of counsel claim. Accordingly, we decline to address this assignment of error.
ERRORS PATENT REVIEW
Defendant requests an errors patent review. However, this Court routinely reviews the record for errors patent in accordance with La. C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La. 1975), and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990), regardless of whether the defendant makes such a request.
When imposing defendant’s enhanced sentence, the trial judge stated that it was his intention “that this sentence be run concurrent with any parole revocation that [defendant] may be facing. Understand that I don’t control your parole revocation, but it is my intention that this be concurrent with your parole revocation, if your actual parole is revoked.” (Emphasis added.) La. C.Cr.P. art 879 provides that “[i]f a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence.” While there is no prohibition against a trial judge ordering a sentence to run concurrently with an existing parole revocation,[20] we find that the instant enhanced sentence is indeterminate, and thus in violation of La. C.Cr.P. art. 879, because defendant’s parole status at the time his enhanced sentence was imposed is unclear from the record. Therefore, we vacate defendant’s habitual offender sentence and remand the matter to the trial court for resentencing of defendant as a habitual offender, including clarification of defendant’s parole status as of the time of re-sentencing. We also accordingly reinstate and affirm defendant’s original sentence.
Additionally, when sentencing defendant as a habitual offender, the trial court vacated the original sentence, imposed the enhanced sentence, and further ordered defendant to pay a fine of $500.00 as was previously imposed on original sentencing. The habitual offender statute, La. R.S. 15:529.1, does not, however, authorize the *920 imposition of a .fíne, but only provides for enhanced sentences relating to the term of imprisonment. State v. Dickerson, 584 So.2d 1140 (La. 1991). Thus, the trial court did not have authority to impose a fine on resentencing under La. R.S. 15:529.1, despite the provision for a fine in the underlying criminal reference statute. However, because we have already vacated defendant’s enhanced sentence and' reftiandéd the matter to the trial court for resentencing, no further action is required at this time concerning this patent error.
Finally, the record contains only one hard labor commitment which reflects both the original and habitual offender proceedings. The hard labor commitment does not reflect that the trial judge ordered defendant’s original sentence,to run concurrently with his sentences in case number 15-4972. The hard labor commitment is accurate as to the habitual offender sentence that the trial judge |19ordered the “above sentence run concurrently with # 15-4972 and any parole revocation, excluding court costs and fees.” Although the original sentence on count one was vacated, we have reinstated and affirmed the original sentence, and accordingly remand the matter for correction of the Uniform Commitment Order to include the concurrent nature of defendant’s original sentence to ensure accuracy in the record.[21] Upon resentencing, we'also direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected Uniform Commitment Order to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections’ legal department. See State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142 (citing La. C.Cr.P. art. 892(B)(2)).
CONCLUSION
For the foregoing reasons, defendant’s conviction of possession of heroin is affirmed, his original sentence thereon is reinstated and affirmed, his habitual offender adjudication is affirmed, his habitual offender sentence is vacated, and the .matter is remanded for resentencing and for correction, of the Uniform Commitment Order. Further, appellate counsel’s motion to withdraw as counsel of record for defendant is granted.
CONVICTION AFFIRMED; ORIGINAL SENTENCE REINSTATED AND AFFIRMED; HABITUAL OFFENDER ADJUDICATION AFFIRMED; HABITUAL OFFENDER SENTENCE VACATED; REMANDED FOR RESENTENCING AND FOR CORRECTION OF THE UNIFORM COMMITMENT ORDER; MOTION TO WITHDRAW GRANTED

. Defendant also pled guilty to various misdemeanor offenses in case number 15-4972, which is not part of the present appeal.

. Although the trial court did not say "at hard labor” when sentencing defendant, the court did state that defendant's sentence was to be served "in the Department of Corrections.” This Court has previously held that when the trial judge states that the defendant is sentenced to the "Department of Corrections,” the sentence is necessarily at hard labor; therefore, no corrective action is necessary. See State v. Martin, 10-710 (La.App. 5 Cir. 5/24/11), 70 So.3d 41, writ denied, 11-1367 (La. 2/3/12), 79 So.3d 1023, cert. denied, 568 U.S. 839, 133 S.Ct. 142, 184 L.Ed.2d 69 (2012).

. When sentencing defendant in district court case number 15-4972, the trial judge articulated that those sentences were to run concurrently with the instant sentence.

. The court recommended drug treatment and any suitable self-help programs available to defendant.

. In the habitual offender bill of information, the State alleged a 2011 Jefferson Parish predicate conviction of attempting to disarm a police officer.

. The court again recommended drug treatment and any suitable self-help programs available to defendant.

. The trial court ordered that the motion for an out-of-time appeal was granted specifically in district court case number 15-4971.

. In Bradford, this Court adopted the procedures outlined in State v. Benjamin, 573 So.2d 528, 530 (La. App. 4 Cir. 1990), which were sanctioned by the Louisiana Supreme Court in State v. Mouton, 95-0981 (La. 4/28/95), 653 So.2d 1176, 1177 (per curiam).

. Additionally, this Court sent defendant a letter by certified mail informing him that an Anders brief had been filed on his behalf and that he had until February 27, 2017 to file a *912 pro se supplemental brief. Defendant filed a pro se supplemental brief with this Court on March 6, 2017. Defendant filed an additional pro se supplemental brief with this Court on April 6, 2017, requesting an errors patent review by this Court.

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

. The waiver of rights form lists the crimes defendant pled guilty to under the instant case number and case number 15-4972. Specifically, the form lists "40:966(C)(1)(B)(11), *913 "40:966(D)(1) ... 32:123(B);” as those crimes to which defendant pled guilty. The form lists the incorrect statutory citation for possession of heroin. The correct statute is La. R.S. 40:966(C)(1). Nevertheless, the colloquy between the trial judge and defendant reveals that defendant was aware that he was pleading guilty to possession of heroin, as evidenced by the court’s reading of the language of the statute and defendant’s acknowledgment that he understood what constituted the crime of possession of heroin.

. The record does not reflect that this was a plea pursuant to North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The "best interest” or Alford plea is one in which the defendant pleads guilty while maintaining his innocence. McCoil, 924 So.2d at 1122. Although defendant agreed that the plea was in his best interest, he also admitted his guilt in this matter. Further, there was no mention of Alford in the waiver of rights form or during the colloquy.

. See also State v. Williams, 05-582 (La.App. 5 Cir. 2/14/06), 924 So.2d 327, 332-33, in which this Court recognized on errors patent review that the record reflected that the trial judge failed to advise the defendant of his habitual offender rights prior to his stipulation to the habitual offender bill of information, This Court found that although the judge did not advise the defendant in court of his habitual offender rights, the colloquy indicated that defense counsel had advised the defendant of those rights and the record contained a waiver of rights form that listed the habitual offender rights. This Court also noted that the form was dated on the same date that the defendant stipulated to the habitual bill, which was signed by the defendant, his counsel, and the judge. After considering the exchange that took place among the parties and the waiver of rights form, this Court found that the defendant was adequately advised of his rights before he stipulated to the habitual offender bill and that he knowingly and intelligently waived those rights.

. During the colloquy, defendant questioned whether one of his convictions in case number 15-4972 was being used as the predicate conviction for the habitual offender bill of information. The trial judge clarified that defendant was being habitually billed on the conviction of possession of heroin and the predicate conviction of attempted disarming of a police officer. Following the judge’s explanation, defendant indicated that he had no further questions.

. At .the time the offense was committed, a conviction under La. R.S, 40:966(C)(1) for a Schedule I controlled dangerous substance carried a term of imprisonment at hard labor for “not less than four years nor more than ten years and may, in addition, be required to pay a fine of not more than five thousand dollars.” La. R.S. 15:529.1(1) provided the sentence shall be for a determinate term of "not less than one-half the longest term and not more than twice the longest term” prescribed for the underlying conviction.

. It is noted that the habitual offender waiver of rights form states that defendant would receive six years in the Department of Corrections. It is silent as to the $500,00 fine and court costs. Nonetheless, the trial court imposed the $500.00 fine and court costs when enhancing defendant’s sentence, A fine is not authorized by La. R.S. 15;529.1. See Errors Patent Discussion, infra. Further, it seems that defendant was aware that he would be subject to court costs on his enhanced sentence, since costs were imposed on his original sentence as well as his sentences for case number 15-4972.

. Because defendant’s arguments in his pro se assignments numbers one and two overlap, they are addressed together.

.Defendant attached these items and other correspondence to his pro se brief, An appellate court is precluded from considering evidence which is not part of the record. Exhibits attached to an appellate brief, but not offered into evidence at trial, are not part of the appellate record and are beyond the scope of appellate review. The bill of information in case number 15-4972 and the correspondence attached to defendant’s pro se brief are not a part of the appellate record, and thus, will not be considered. State v. Wilt, 14-823 (La.App. 5 Cir. 4/29/15), 170 So.3d 317, 324 n.8, writ denied, 15-1055 (La. 5/2/16), 206 So.3d 877, The arrest report and probable cause affidavit do appear in the record.

. See footnote 18, supra.

. See State v. Ott, 12-111 (La.App. 5 Cir. 10/16/12), 102 So.3d 944, 955.

. The hard labor commitment and the Uniform Commitment Order reflect that defendant was "given credit for time served from date of initial arrest until today for each day defendant actually served.” The transcript indicates that for his enhanced sentence, defendant was given credit "for any time served in connection with this matter.” Therefore, we find that the commitment and the Uniform Commitment Order differ from the sentencing transcript. See State v. Lynch, 441 So.2d 732, 734 (La. 1983). Nevertheless, credit for time served is self-executing under La. C.Cr.P. art. 880.